UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JESSE B. OSMER,

    Plaintiff,

  v.

Officer JASON AVERY, et al.,,

    Defendant.

Case No. C09-5498 FDB

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants Jason Avery, Matt Krysinski, and the City of Port Townsend's motion for summary judgment. The Defendant officers and municipality seek a ruling as a matter of law that the officers are entitled to qualified immunity for their warrantless entry into the Osmer home and the arrest of Plaintiff Jesse Osmer. Defendants also seek dismissal of Plaintiff's state law claims. The Court, having reviewed the parties' submissions and determining that oral argument is not necessary for the disposition of this motion, is fully informed and grants the motion for summary judgment dismissing Plaintiff's claims in their entirety.

ORDER - 1

**Introduction and Background**

This is a 42 U.S.C. § 1983 lawsuit alleging Fourth Amendment violations.  Plaintiff Jesse Osmer claims his civil rights were violated on July 4, 2007, when the City of Port Townsend police officers Jason Avery and Matt Krysinski made a warrantless entry and arrest of Plaintiff after receiving reports he was smoking marijuana and  manufacturing opium.  Plaintiff also alleges state law violations of the Washington Constitution, false arrest and false imprisonment.

The First Amended Complaint alleges that Plaintiff Osmer was at his home in Port Townsend near midnight on July 3, 2007, with his brother Andrew Osmer and a friend Peter Brown, when the Jefferson County dispatch center received a 911 call that Plaintiff "was involved with the possible cultivating of opium and smoking of marijuana" at the residence.

Earlier in the day, Plaintiff Osmer had come across opium poppy plants in full bloom growing in a Port Townsend vacant lot.  Plaintiff decided to pull up the plant to boil them to make "poppy tea" with the seed bulbs.  Plaintiff had done this two or three times before in order to "cop a buzz" or to "inebriate yourself."  Plaintiff knew that opiates are controlled substances.

Police dispatch notified City of Port Townsend Police Officers Jason Avery and Matt Krysinski that Plaintiff was making opium and smoking marijuana at his residence at 1734 Sheridan Street, Port Townsend. In response, the Officers went to the address to investigate the report.

Both Officers arrived shortly after midnight and approached the front door of the residence through a fence gate.  Officer Krysinski could see through the partially closed blinds of a large bay window where he observed a man sitting on a couch, and shortly thereafter, he saw another man enter the room. Officer Avery began knocking on the front door and Officer Krysinski observed the second man, later identified as Plaintiff Osmer, hurry over to a large bundle of green leafy substance with exposed roots.  Osmer picked up the material and hurried down a hallway. Officer Krysinski thought the material was a marijuana plant and that Plaintiff intended to conceal or

ORDER - 2

destroy the evidence of a crime. Officer Krysinski relayed his concerns to Officer Avery. Officer Avery announced their presence as police officers and asked the occupants to open the door. The door opened, and the Officers could smell marijuana. The Officers confronted Peter Browne first and then Plaintiff who had reappeared from the back of the house. Officers entered the home, and detained Plaintiff and Mr. Brown in handcuffs.

When asked if anyone else was in the residence, Plaintiff indicated to the Officers that 17-year-old Andrew Osmer was in a bedroom. Officer Krysinski quickly checked the house for other occupants to insure officer safety and found Andrew Osmer in a bedroom where a large bundle of poppy plants was plainly visible along with a plate containing numerous poppy buds, and a drug pipe. Plaintiff Osmer admitted taking the plants, a plate of poppy pods, and a marijuana pipe to the bedroom to hide them from police. He admitted he did this because he was concerned about the legality of the situation. Plaintiff admits that he and Browne had been smoking marijuana, the odor of which officers detected when the door opened.

Osmer denied that either Andrew or Peter Browne was involved with the poppy plants, and they were not arrested. Osmer was arrested and booked for possession of raw opium. The Officers field tested the plant materials which indicated a positive finding for opiates. Plaintiff was charged by the Jefferson County prosecutor with possession of raw opium, and the court released Plaintiff from custody after finding probable cause to believe he committed the crime charged. The charges were dismissed when the crime lab failed to detect controlled substances in the plant material.

Plaintiff subsequently commenced this action against the arresting Officers and the City of Port Townsend.

**Summary Judgment Standard**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

ORDER - 3

1  any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.
2  56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails
3  to make a sufficient showing on an essential element of a claim in the case on which the nonmoving
4  party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985). There is no
5  genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of
6  fact to find for the non moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.
7  574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply
8  some metaphysical doubt). Conversely, a genuine dispute over a material fact exists if there is
9  sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the
10 differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W.
11 Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

12     The determination of the existence of a material fact is often a close question. The court
13 must consider the substantive evidentiary burden that the nonmoving party must meet at trial-e.g., a
14 preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Serv.,
15 Inc., 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the
16 nonmoving party only when the facts specifically attested by that party contradict facts specifically
17 attested by the moving party. The nonmoving party may not merely state that it will discredit the
18 moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the
19 claim. T.W. Elec. Serv., Inc., 809 F.2d at 630. Conclusory, non specific statements in affidavits are
20 not sufficient, and missing facts will not be presumed. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871,
21 888-89 (1990).

22                          **Qualified Immunity Standard**

23     Qualified immunity is an "entitlement not to stand trial or face the other burdens of
24 litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001)(abrogated in part on other grounds by

25

26 ORDER - 4

Pearson v. Callahan, ---U.S. ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)).  Defendants in a 42 U.S.C. § 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular officer.  Id. at 819.  "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation.  Act Up!/ Portland v. Bagley, 988 F.2d 868, 872-73 (9th Cir. 1993).

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case.  Saucier, 533 U.S. at 201.  "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id.  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Brosseau, 543 U.S. at 199.  The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.  Saucier, 533 U.S. at 201.

Plaintiff bears the burden of showing that the right in question was clearly established at the time of the incident.  Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).  Moreover, the right must be clearly established in the context of the circumstances faced by the officers.  Jensen v.

ORDER - 5

City of Oxnard, 145 F.3d 1078, 1082 (9th Cir. 1988). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier, 503 U.S. at 202. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. Malley v. Briggs, 475 U.S. 335, 341 (1986).

## 42 U.S.C. § 1983 Claims

The First Amended Complaint asserts federal claims against the Defendant City and its officers pursuant to 42 U.S.C. § 1983. First, Plaintiff asserts a Section 1983 claim stemming from a false arrest and detention of Plaintiff without a warrant or probable cause in violation of the Fourth Amendment. Plaintiff also asserts a 42 U.S.C. § 1983 claim for violation of Article 1 Section 7 of the Washington State Constitution.

Initially, the Court finds that an alleged violation of the Washington State Constitution does give rise to federal civil rights action pursuant to 42 U.S.C. § 1983. Because Section 1983 allows for the recovery of damages for violation of rights secured by the United States Constitution and federal law, a claim under Article I, Section 7 of the Washington State Constitution does not come within the scope of 42 U.S.C. § 1983. Furfaro v. City of Seattle, 144 Wash.2d 363, 375-76, 27 P.3d 1160, 1167 (2001). Thus, Plaintiff's claim for relief under 42 U.S.C. § 1983 for violation of rights under the Washington State Constitution fails to assert a Section 1983 claim.[1]

In evaluating a Section 1983 claim against an officer, the court proceeds in a two-part analysis. The "threshold question" is "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001) (abrogated in part on other grounds by Pearson v. Callahan, ___U.S. ___, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)). If the Constitution was not violated,

---

[1] In addition, Plaintiff's' claim for violations of federal rights may not be supported by Washington case law to the extent that the case law depends upon the Washington Constitution. See Furfaro v. City of Seattle, 144 Wash.2d 363, 376, 27 P.3d 1160, 1167 (2001).

ORDER - 6

that is the end of the inquiry. If there was a violation, however, the court proceeds to the question of qualified immunity. Although the courts have flexibility in deciding which part of the analysis to address first, it is appropriate in this case to determine first whether a constitutional violation occurred.

A claim for unlawful arrest is cognizable under Section 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification. Dubner v. City and County of San Francisco, 266 F.3d 959, 965 (9th Cir. 2001). An officer is not liable for damages based on a claim of false arrest if there was probable cause to make the arrest. Pierson v. Ray, 386 U.S. 547, 555-57 (1967); Lassiter v. City of Bremerton, 556 F.3d 1049, 1054-55 (9th Cir.2009). This is true even if the charges are later dropped or the person arrested is subsequently acquitted. Michigan v. DeFillippo, 443 U.S. 31, 36 (1979); Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995).

Probable cause to arrest exists when officers have knowledge or reasonable trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested. Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007). Probable cause to arrest exists when, under the totality of the circumstances known to the arresting officer, a prudent person would conclude there is a fair probability that the arrestee had committed, or was committing, a crime. Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004).

The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585 (1980). "Searches and seizures inside a home without a warrant are presumptively unreasonable." Id. at 586; U.S. v. Martinez, 406 F.3d 1160, 1163 (9th Cir. 2005). There are two general exceptions to the warrant requirement for home searches: exigency and emergency. Under the exigency doctrine, a warrantless search of

ORDER - 7

a home is permitted if there is probable cause to believe that contraband or evidence of a crime will be found at the premises and that exigent circumstances exist. U.S. v. Martinez, 406 F.3d 1160, 1164 (9th Cir. 2005). As a general rule, exigent circumstances are those circumstances that would cause a reasonable person to believe that entry was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts. Id.; United States v. Gooch, 6 F.3d 673, 679 (9th Cir. 1993); United States v. McConney, 728 F.2d 1195, 1199 (9th Cir. 1984).

Police officers need both probable cause and exigent circumstances to lawfully enter a home without a warrant. See Kirk v. Louisiana, 536 U.S. 635, 638 (2002); Hopkins v. City of Sierra Vista, 931 F.2d 524, 527 (9th Cir. 1991). That is, they must have "reasonable belief, evaluated in light of the officer's experience and the practical considerations of everyday life, that a crime has been, is being, or is about to be committed." Hopkins, 931 F.2d at 1441. Probable cause, in exigency cases, "must be applied by reference to the circumstances then confronting the officer, including the need for prompt assessment of sometimes ambiguous information concerning potentially serious consequences." Murdock v. Stout, 54 F.3d 1437, 1441 (9th Cir. 1995).

Under the Fourth Amendment, a warrantless arrest requires probable cause. United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007). Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed or is committing an offense. Crowe v. County of San Diego, 593 F.3d 841, 867 (9th Cir. 2010); Barry v. Fowler, 902 F.2d 770, 773 (9th Cir. 1990). In determining whether there was probable cause to arrest, the court looks to the totality of circumstances known to the arresting officers, to determine if a prudent person would have concluded there was a fair probability that the suspect had committed a crime. Crowe, 593 F.3d at

ORDER - 8

867; United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986).

As an initial matter, Plaintiff asserts Defendants lacked the requisite information from the 911 operator to justify a warrantless entry. Officer Avery and Officer Krysinski were informed by their dispatch center of reported illegal drug activity, the use of marijuana and possibly the production of opiates, at 1734 Sheridan Street in the City of Port Townsend. Both Officers responded to the address to investigate a call of illegal drug activity. There is nothing inherently wrong in the Officers initial steps in investigating the complaint of illegal activity. The Officers are in fact expected to respond, investigate and take action when criminal activity is discovered.

Upon arrival, the Officers approached the residence at 1734 Sheridan Street and went to the front door. Their approach to the front porch was made through the gate in the fence which leads to the front yard of the residence. This would be the normal route that any other person coming to the residence would use to make a delivery or inquiry or to visit. The Officers did not violate any right of the Plaintiff by walking up the same path that other members of the public could use to approach the residence. United States v. Magana, 512 F.2d 1169, 1171 (9th Cir. 1975); Wattenburg v. United States, 388 F.2d 853, 857 (9th Cir. 1968).

Arriving at the front door, Officer Krysinski could see through the blinds of the adjacent front window two males in the residence, one sitting on a couch. Officer Avery knocked on the front door, identified himself as the police department, and requested the resident to come to the door. At that time Officer Krysinski told Officer Avery that a male subject had taken a large bunch of green leafy substance and some unknown object and moved rapidly down the hallway. Observations through the window do not constitute an unlawful search. See United States v. Barajas-Avalos, 377 F.3d 1040 (9th Cir.2004)

Officer Krysinski, having observed the person inside the residence hurry down the hallway with the large green leafy bunch, advised Officer Avery that he felt that an attempt was being made

ORDER - 9

to hide or destroy evidence of a crime. The door was opened by Peter Brown and the Officers could smell the odor of burnt marijuana. The Officers entered the residence to prevent the possible destruction of evidence.

The totality of these circumstance provided the Officers with probable cause and exigent circumstances to enter the residence without a warrant. The 911 call was verified by the Officers' lawful view of the activity through the front window of the residence, and further confirmed by the odor of marijuana when the door was opened. Entry into the residence was justified by the exigent circumstance of preventing the apparent destruction or concealing of evidence of a crime. United States v. Gooch, 6 F.3d 673, 679 (9th Cir. 1993); United States v. McConney, 728 F.2d 1195, 1199 (9th Cir. 1984).

Brown was joined at the entry by Plaintiff Osmer. Officer Avery moved both individuals into the living room area and placed them in handcuffs. Officer Krysinski made a sweep of the house for anyone else that may be present and discovered Andrew Osmer in one of the bedrooms. During this safety sweep of the house, Officer Krysinski observed in plain view on the floor of the bedroom, where he located Andrew Osmer, what he suspected to be illegal opium buds, a bundle of green vegetable matter and a multicolored glass smoking device which smelled of freshly burnt marijuana. He took possession of these items which he believed to be illegal contraband.

Once the Officers had secured the residence with the safety sweep, Officer Avery read to the suspects their rights as prescribed by law. Jesse Osmer took full responsibility for the poppy plants. He further told the Officers that he had smoked marijuana in the house earlier, but there was none left in the house. Due to the lack of any marijuana as evidence neither Plaintiff Osmer, nor the other individuals, were arrested for that offense. Due to the items found in the house during the sweep of the house by Officer Krysinski and the admission by Jesse Osmer that the poppy plants were his, he was booked into the county jail for the felony possession and manufacturing of opium.

ORDER - 10

1  Possession or manufacture of opium is a felony offense.  RCW 69.50.206(a)(1)(I) and (3)
2  lists "raw opium" and "opium poppy" as Schedule II drugs.  RCW 69.50.401 provides that it is a
3  Class B felony for unauthorized persons to possess or manufacture any quantity of a controlled
4  substance on Schedule II.  A "controlled substance" is a drug, substance, or immediate precursor of
5  substances listed in Schedules I through V.

6  Under the totality of the circumstances known to the arresting Officers, a prudent person
7  would conclude there is a fair probability that the Plaintiff had committed, or was committing, a
8  crime.  See Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004).  This is true, even
9  though the charges against Plaintiff were subsequently dismissed.  See Freeman v. City of Santa
10 Ana, 68 F.3d 1180, 1189 (9th Cir. 1995).

11 Plaintiff has failed to present a material issue of fact of a constitutional violation in his
12 detention and arrest.

### Qualified Immunity

14 Plaintiff has produced insufficient evidence of a constitutional violation based on
15 Defendants' warrantless entry and arrest.  Nevertheless, if a reviewing court determines a
16 constitutional violation occurred, this Court alternatively examines the second step of the qualified
17 immunity analysis to determine whether Defendants made a reasonable mistake about what the law
18 requires.

19 The Supreme Court has held that "it is inevitable that law enforcement officials will in some
20 cases reasonably but mistakenly conclude that probable cause is present." Anderson v. Creighton,
21 483 U.S. 635, 641, (1987).  When that happens, the officials "should not be held personally liable."
22 Id.  Officers are immune from suit when they reasonably believe that probable cause existed, even
23 though it is subsequently concluded that it did not, because they "cannot be expected to predict
24 what federal judges frequently have considerable difficulty in deciding and about which they

26 ORDER - 11

frequently differ among themselves." Crowe v. County of San Diego, 593 F.3d 841, 868 (9th Cir. 2010)

Here, even viewing the evidence in the light most favorable to the Plaintiff, officers of reasonable competence could disagree on whether the exigency exception to the warrant requirement applied in this situation. Defendants are entitled to qualified immunity because they could have reasonably believed that probable cause and exigent circumstances existed, requiring them to enter the residence to prevent the destruction of evidence of a crime and to make an arrest of Plaintiff for the possession of opiates.

### State Law Claims for False Arrest and False Imprisonment

False arrest occurs under Washington law when a law enforcement officer unlawfully restrains or imprisons another. Demelash v. Ross Stores, 105 Wn. App. 508, 529, 20 P.3d 447 (2001). The state law standard for false arrest and false imprisonment is based upon the same considerations of probable cause that apply to the Fourth Amendment issue in this case. An arrest is valid if there is lawful authority for it, and it is based on probable cause. State v. Gaddy, 152 Wn.2d 64, 70, 93 P.3d 872 (2004). Probable cause exists when the arresting officer is aware of facts or circumstances, based on reasonably trustworthy information, sufficient to cause a reasonable officer to believe a crime has been committed. Id. at 70; Saucier v. Katz, 533 U.S. 194, 207 (2001).

The facts known to the Officers are not in dispute, nor is there dispute about the Officers' conduct when they investigated, detained, and arrested Plaintiff. Defendants presented ample, undisputed evidence to show the officers had probable cause to arrest Mr. Osmer. The Officers were dispatched to Plaintiff's residence to investigate a report that the occupants were smoking marijuana and manufacturing opium. On investigation, the information was corroborated, and Osmer was seen attempting to hide plant material the Officers believed at the time to be

ORDER - 12

1  marijuana.  Plaintiff admits he was trying to conceal the opium poppy plant material he had recently

2  harvested.  The poppies found in the home were opium poppies which, by law, Plaintiff could not

3  possess to "inebriate" himself as he intended.  The Officers had probable cause to detain and arrest

4  the Plaintiff.  Plaintiff's state law false arrest and false imprisonment claims fail as a matter of law.

**Conclusion**

For the reasons stated, Defendants are entitled to dismissal of Plaintiff's claims in their entirety.  Plaintiff's constitutional rights prohibiting unreasonable detention and arrest were not violated.  The Defendants are also entitled to qualified immunity with regard to Plaintiff's claim he was detained and arrested in violation of the Fourth Amendment.  Plaintiff's claims for 42 U.S.C. §1983 civil rights violations are dismissed with prejudice.  Similarly, Plaintiff's claims for violation of Washington state constitutional provisions, state law false arrest and false imprisonment are dismissed with prejudice.

ACCORDINGLY;

IT IS ORDERED:

Defendants' Motion for Summary Judgment [Dkt. # 18, 25] is **GRANTED**.  All claims against all Defendants are **DISMISSED WITH PREJUDICE**.


DATED this 22nd day of March, 2010.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE
for
FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 13